UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

HUDSON RIVER–BLACK RIVER
REGULATING DISTRICT,

                          Plaintiff,

     -v-                                                6:14-CV-173

ERIE BOULEVARD HYDROPOWER, L. P.,

                          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                               OF COUNSEL:

HON. ERIC T. SCHNEIDERMAN                   C. HARRIS DAGUE, ESQ.
Attorney General for the State of New York  Ass't Attorney General
Attorneys for Plaintiff
The Capitol
Albany, NY  12224

PATTERSON BELKNAP WEBB & TYLER LLP          SARAH E. ZGLINIEC, ESQ.
Attorneys for Defendant                     STEPHEN P. YOUNGER, ESQ.
1133 Avenue of the Americas                 JASON R. VITULLO, ESQ.
New York, NY  10036


DAVID N. HURD
United States District Judge

## DECISION and ORDER

## I. INTRODUCTION

     Plaintiff Hudson River–Black River Regulating District ("plaintiff" or "the District")

initiated this action in New York State Supreme Court, Fulton County, on January 21, 2014,

seeking declaratory relief.  Defendant Erie Boulevard Hydropower, L.P. ("defendant" or

"Erie") removed the action to federal court in the Northern District of New York on February

20, 2014.

Erie has now filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). The District responded in opposition, Erie replied, and the District was permitted to file a sur-reply. Oral argument was heard on October 29, 2014, in Utica, New York. Decision was reserved.

## II. <u>BACKGROUND</u>

The following factual and procedural background is not in dispute and has been gleaned from the complaint and defendant's memorandum of law.[1] The District is a public authority that operates the Conklingville Dam ("the Dam") and its related body of water, the Great Sacandaga Lake. Erie operates several hydropower facilities located downstream from the Dam. During the relevant time period, and pursuant to New York state law, Erie paid assessments to the District for "headwater benefits" or "downstream benefits" resulting from the Dam.

In September 2002, the Federal Energy Regulatory Commission ("FERC") issued a license to the District permitting the continued operation of the Dam pursuant to the Federal Power Act, 16 U.S.C. §§ 791a–828c ("FPA"). Section 10(f) of the FPA recognizes headwater benefits and allows public authorities, such as the District, to impose assessments on downstream facilities, such as Erie, for such benefits. <u>See</u> 16 U.S.C. § 803(f). However, the rates permitted under the FPA are significantly less than those allowed by New York law.

Erie initiated six separate Article 78 proceedings in state court between 2000 and 2006 challenging the amount of the assessments the District had imposed under New York

---

[1] Plaintiff notes that defendant's memorandum of law "adequately summarize[s]" the relevant facts. Pl.'s Mem. 2.

state law.  In May 2006, the District and Erie entered into a Settlement Agreement resolving these consolidated proceedings ("the 2006 Settlement Agreement").  As part of the settlement, the District agreed to provide Erie with over $800,000 in credits to reduce future assessments between July 2006 and June 2009, and Erie waived all claims related to the assessments during that time period.  The 2006 Settlement Agreement also indicates that the parties "executed a document entitled 'Amendment to Reservoir Operating Agreement and Letter Agreement' dated May 19, 2006 as part of the consideration for entering into this Stipulation of Settlement and Order."  Compl., Ex. B, ECF No. 1-1, ¶ 14.  The agreement also contains a severability clause.

In July 2006, Albany Engineering Corporation, a FERC-licensed operator of a downstream facility similar to Erie, filed an administrative complaint with FERC arguing the District lacked authority to impose assessments greater than that permitted by section 10(f) of the FPA.  See Albany Eng'g Corp. v. F.E.R.C., 548 F.3d 1071, 1073 (D.C. Cir. 2008).  The case made its way to the D.C. Circuit, which noted "Congress's clear intent to limit the total amount of charges imposed on downstream operators" and ultimately held that section 10(f) of the FPA preempted "*all* state headwater benefits assessments."  Id. at 1079.  Thus, from the time FERC issued its license to the District in 2002, "the District *never* had such authority to exact *any* compensation from Albany for headwater benefits."  Id.  The Court remanded the matter to FERC for consideration of an appropriate remedy.  Id. at 1081.

Subsequent to the Albany Engineering Corp. decision, the District and the downstream operators have attempted to resolve their disputes regarding alleged overpayments.  Citing a July 2012 FERC Order, Erie claims it overpaid the District approximately $7.3 million in assessments between September 2002 and June 2009.  Erie

and the District have been unable to amicably resolve their dispute and are currently

engaged in administrative proceedings before FERC. The District initiated this action after

the FERC proceedings began.

In its complaint, the District reports that Erie refuses to pay additional headwater

benefits assessments until the full amount of its $7.3 million overpayment has been offset.

The District claims the 2006 Settlement Agreement "expressly operates to extinguish any

claimed entitlement by Erie to any State law-based assessment that Erie paid the Regulating

District between 2002–2008." Compl. ¶ 23. In accordance with that conclusion, plaintiff

seeks a declaration that the 2006 Settlement Agreement "precludes Erie's claim for a refund

of assessments collected by the Regulating District for budget years encompassing July 1,

2000 through June 30, 2009." Id. ¶ 24.

## III. DISCUSSION

Erie asserts the following arguments in support of its motion to dismiss: (1) The

District's request for declaratory relief, pursuant to the 2006 Settlement Agreement, is an

attempt to enforce the previous state law assessments and is thus preempted by the FPA, as

explained in the Albany Engineering Corp. decision; (2) the 2006 Settlement Agreement is

unenforceable because FERC never approved it; (3) the administrative proceedings before

FERC are ongoing and concern the exact same issues presented in this action; and,

alternatively, (4) the action should be stayed pending the outcome of the FERC proceeding.

Importantly, Erie also points out that it does not seek a refund of the $7.3 million. It instead

desires future credits.

In its response, the District addressed only Erie's first argument and "concedes that

the Settlement Agreement is wholly unenforceable as preempted by federal law, and

consents to entry of Judgment by the Court dismissing the Complaint on the specific ground that the entire Settlement Agreement is unenforceable as preempted by the Federal Power Act." Pl.'s Mem., ECF No. 20, 2.[2] The District did not respond to Erie's remaining arguments.

In its reply brief, Erie attempts to clarify its initial position. Specifically, Erie argues that only the portion of the 2006 Settlement Agreement that deals with headwater benefits assessments—not the entire document—is unenforceable. Therefore, despite the initial concession to dismissal based on the unenforceability of the 2006 Settlement Agreement, the parties do not agree on which parts of the 2006 Settlement Agreement, if any, remain enforceable.

However, this issue need not be decided. The District seeks "[a] declaration that Erie's claim for a refund of District assessments levied between July 1, 2000 and June 30, 2009 is precluded by Erie's waiver memorialized in the 2006 Stipulation of Settlement and Order." Compl. 12 (emphasis provided). As the parties tacitly agreed during oral argument, the court system is the appropriate forum for claims related to refunds of District assessments. Therefore, the district court would have jurisdiction to decide what impact, if any, the 2006 Settlement Agreement has on a claim by Erie for a refund of the approximately $7.3 million in overpayments. However, as Erie has repeatedly noted before FERC and in its motion papers here, it is not seeking a refund. It is instead seeking future credits to offset the amount it owes the District.

Indeed, FERC explained this critical distinction in a May 2009 order:

---

[2] In its sur-reply, the District reveals its motivation for conceding the 2006 Settlement Agreement is entirely unenforceable; to wit, such may allow the parties to renegotiate the six-year Reservoir Operating Agreement in light of the Albany Engineering Corp. decision.

> We continue to believe, as we concluded in our prior orders, that we do not have the authority to order refunds of charges collected by the District without authority, although we may be able, at the conclusion of a headwater benefits investigation, to permit [a downstream operator] to offset amounts it owes by the amounts it has paid to the District. If [the downstream operator] wishes to pursue immediate refunds, it would have to do so through the court system.

Younger Decl., Ex. 4, ECF No. 18-7, ¶ 19 (footnote omitted); see also Albany Eng'g Corp. v. Hudson River–Black River Regulating Dist., 110 A.D.3d 1220, 1221–22 (N.Y. App. Div. 3d Dep't 2013) (noting FERC has concluded that, although "it would consider applying the improper assessments as a credit in determining the assessments owed by plaintiff in the future[,] . . . plaintiff was free to seek a refund in state court"). Erie has elected to seek an offset of the amount it has allegedly overpaid to the District. Therefore, FERC is the proper forum, and the District's requested declaratory relief regarding a refund is moot.[3]

Moreover, the parties are currently working with FERC to address the issue of an appropriate remedy. Part of that administrative proceeding relates to what impact, if any, the 2006 Settlement Agreement has on the remedy. See ECF No. 1-3 (outlining the District's opposition to Erie's submissions to FERC and asserting that the 2006 Settlement Agreement "clearly limits the amount which Erie can claim as a credit"); ECF No. 1-4 (detailing Erie's reply to the District's argument regarding the impact of the 2006 Settlement Agreement). Therefore, the very issue for which the District seeks declaratory relief in this action is squarely, and more appropriately, before FERC in the pending administrative proceeding.[4]

_____

[3] At oral argument, counsel for the District attempted to expand its request for declaratory relief to include the credits/offset issue. This is unpersuasive given the specific language used in the complaint. Also, such an argument smacks of hypocrisy in light of the District's attempt to hold Erie to the specific language put forth in its original motion papers.

[4] Erie reports that "FERC is presently considering this very issue" and claims the administrative proceeding "is now nearly complete." Def.'s Mem., ECF No. 18-1, 16, 23. Further, the fact that this exact issue was pending before FERC when the District initiated this lawsuit suggests it did so with an improper
(continued...)

Accordingly, even if the issue were not moot, it is proper to abstain from deciding this matter before the administrative process is complete.  See Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995) (noting that the Declaratory Judgment Act confers upon federal courts "substantial discretion in deciding whether to declare the rights of litigants"); Dow Jones & Co., 346 F.3d at 359–60.  Additionally, assuming FERC's ultimate decision is made pursuant to its authority under the FPA, such is only reviewable in the United States Court of Appeals. 16 U.S.C. § 825l(b); In re NRG Energy, Inc., No. 03 Civ. 3754, 2003 WL 21507685, at *4 (S.D.N.Y. June 30, 2003) ("In sum, under the elaborate statutory scheme created by the FPA, only a federal court of appeals may exercise jurisdiction to review a FERC decision.").

Therefore, it is

ORDERED that

1.  Defendant Erie Boulevard Hydropower, L.P.'s motion to dismiss is GRANTED; and

2.  The complaint is DISMISSED in its entirety.

IT IS SO ORDERED.

The Clerk of the Court is directed to close the case.

_____
United States District Judge

Dated:  October 30, 2014
        Utica, New York.

---

(...continued)
    motive; to wit, forum shopping or a "race to res judicata."  See Dow Jones & Co. v. Harrods Ltd., 346 F.3d
    357, 359 (2d Cir. 2003) (per curiam) (internal quotation marks omitted).